```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
_____
                              :
RAYMOND AIGEBKAEN,            :
                              :
         Petitioner,          :     Civ. No. 20-5732 (NLH)
                              :
     v.                       :     OPINION
                              :
                              :
WARDEN,                       :
                              :
         Respondent.          :
_____:
```

APPEARANCES:

Raymond Aigbekaen
94655-379
Fort Dix Federal Correctional Institution
P.O. Box 2000
Joint Base MDL, NJ 08640

    Petitioner Pro se

Craig Carpenito, United States Attorney
John Francis Basiak, Assistant United States Attorney
Office of the U.S. Attorney
402 East State Street
Room 08608
Trenton, NJ 08608

    Counsel for Respondent

HILLMAN, District Judge

    Petitioner Raymond Aigbekaen brings this amended petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 asking to be released to home confinement due to the coronavirus COVID-19 pandemic. ECF No. 7. He further argues he is actually innocent of his convictions. Id. He seeks bail based on the equal

protection clause, ECF No. 6; sanctions against the United States, ECF No. 11; and a writ of mandamus "compelling the Warden of the Institution FCI Fort Dix, to respect his constitutional, innate, Godgiven, birthright to practice a different 'religion' on every day of the week." ECF No. 12 Respondent United States opposes the § 2241 petition, arguing that Petitioner failed to exhaust his administrative remedies and is otherwise ineligible for home confinement.  ECF No. 10.

For the reasons that follow, the Court will dismiss the § 2241 petition as unexhausted and for lack of jurisdiction. Petitioner's motions will be denied.

I.  BACKGROUND

A jury in the District of Maryland convicted Petitioner of conspiracy to commit sex trafficking of a minor, 18 U.S.C. §§ 1591(c); conspiracy related to interstate prostitution, 18 U.S.C. § 371; sex trafficking of a minor, 18 U.S.C. § 1591(a); interstate transportation for prostitution, 18 U.S.C. § 2421; enticement to travel interstate for purposes of prostitution, 18 U.S.C. § 2422(a); and use of interstate facilities to promote an enterprise involving prostitution offenses, 18 U.S.C. § 1952(a)(3).  Judgment of Conviction, United States v. Raymond Idemudia Aigbekaen, No. 1-15-cr-00462-002 (D. Md. Feb. 9, 2017)

(ECF No. 228).[1]  He was sentenced to a total term of 180 months followed by a five-year period of supervised release.  Id.  The United States Court of Appeals for the Fourth Circuit affirmed Petitioner's convictions on November 21, 2019.  United States v. Aigbekaen, 943 F.3d 713 (4th Cir. 2019).

"In January 2020, the Centers for Disease Control and Prevention began issuing Guidelines to the American public to protect against the coronavirus disease 2019 (COVID-19), a vicious and insidious disease that had suddenly attacked the country."  Wragg v. Ortiz, 462 F. Supp. 3d 476, 483 (D.N.J. 2020).  "One of the later Guidelines recommended that people stay at least six feet apart (about two arms' length) from other people and stay out of crowded places and avoid mass gatherings.  Ubiquitous reminders to 'social distance' or 'physical distance' are now part of everyday life."  Id.  On March 26, 2020, the Attorney General issued guidance for "prioritizing" home confinement for "at-risk inmates who are non-violent and pose minimal likelihood of recidivism and who might be safer serving their sentences in home confinement rather than in BOP facilities."  Memorandum for Director of Bureau Prisons, Mar. 26, 2020, available at

---

[1] The Court takes judicial notice of the public records of Petitioner's criminal case.

https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement.pdf (last visited Nov. 23, 2020) ("March 26 Memorandum").

The memorandum directed the BOP to "consider the totality of the circumstances for each individual inmate, the statutory requirements for home confinement, and" a "non-exhaustive list of discretionary factors:"

- The age and vulnerability of the inmate of COVID-19, in accordance with the Centers for Disease Control and Prevention (CDC) guidelines;

- The security level of the facility currently holding the inmate, with priority given to inmates residing in low and minimum security facilities;

- The inmate's conduct in prison, with inmates who have engaged in violent or gang-related actively in prison or who have incurred a BOP violation within the last year not receiving priority treatment under this Memorandum;

- The inmate's score under PATTERN,[2] with inmates who have anything above a minimum score not receiving priority treatment under this Memorandum;

- Whether the inmate has a demonstrated and verifiable re-entry plan that will prevent recidivism and maximum public safety, including verification that the conditions under which the inmate would be confined upon release would present a lower risk of contracting

---

[2] Prisoner Assessment Tool Targeting Estimated Risk and Needs. According to the BOP's website, "[t]he risk and needs assessment system is used to determine the risk and needs of inmates in BOP custody. Specifically, the system determines the recidivism risk of each inmate and assigns a recidivism risk score of minimum, low, medium, or high risk. The system also assesses each inmate and determines, to the extent practicable, the inmate's risk of violent or serious misconduct." First Step Act - Frequently Asked Questions, available at https://www.bop.gov/inmates/fsa/faq.jsp#fsa_system (last visited Nov. 23, 2020).

>   COVID-19 than the inmate would face in his or her BOP facility;
>
> - The inmate's crime of conviction, and assessment of the danger posed by the inmate to the community. Some offenses, such as sex offenses, will render an inmate ineligible for home detention. Other serious offenses should weigh more heavily against consideration for home detention.

Id. at 1-2.

Before the BOP may release any inmate, "the BOP Medical Director, or someone he designates, will, based on CDC guidance, make an assessment of the inmate's risk factors for severe COVID-19 illness, risks of COVID-19 at the inmate's prison facility, as well as the risks of COVID-19 at the location in which the inmate seeks home confinement." Id. at 2. "[W]e cannot take any risk of transferring inmates to home confinement that will contribute to the spread of COVID-19, or put the public at risk in other ways." Id.

President Trump signed the Coronavirus Aid, Relief, and Economic Security (CARES) Act, Pub. L. No. 116-136, § 12003(b)(2) (2020) into law on March 27, 2020. The CARES Act states in relevant part:

>   During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau, the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate.

5

Pub. L. No. 116-136, § 12003(b)(2) (2020).

In a memorandum dated April 3, 2020, Attorney General Barr directed the BOP to "give priority in implementing these new standards to the most vulnerable inmates at the most affected facilities . . . ."  Memorandum for Director of Bureau of Prisons, Apr. 3, 2020, available at https://www.justice.gov/file/1266661/download (last visited Nov. 23, 2020) ("April 3 Memorandum").

The April 3 Memorandum directed officials to "immediately review all inmates who have COVID-19 risk factors, as established by the CDC," beginning at three particularly hard-hit BOP facilities, FCI Oakdale, FCI Danbury, and FCI Elkton, as well as "similarly situated facilities where you determine that COVID-19 is materially affecting operations."  Id. at 2. Attorney General Barr stated that "now that I have exercised my authority under the CARES Act, your review should include all at-risk inmates-not only those who were previously eligible for transfer."  Id.

"Your assessment of these inmates should thus be guided by the factors in my March 26 Memorandum, understanding, though, that inmates with a suitable confinement plan will generally be appropriate candidates for home confinement rather than continued detention at institutions in which COVID-19 is

6

materially affecting their operations." Id.  The April 3 Memorandum concluded by noting that "while I am directing you to maximize the use of home confinement at affected institutions, it is essential that you continue making the careful, individualized determinations BOP makes in the typical case. Each inmate is unique and each requires the same individualized determinations we have always made in this context." Id. at 3.

On May 3, 2020, Petitioner's mother filed a request for home confinement on Petitioner's behalf.  ECF No. 1.  The Court dismissed that petition without prejudice as Petitioner's mother lacked standing to file a § 2241 petition on Petitioner's behalf.  ECF No. 5.  Petitioner subsequently filed the amended petition on his own behalf seeking "immediate release" or "redesignation to home confinement or commitment to a [illegible] assisted mental health facility."  ECF No. 7 at 1. He also argues the BOP failed to investigate an incident of sexual assault. Id.

Petitioner challenges the conditions of his confinement as related to the COVID-19 pandemic.  He states that his pre-existing medical conditions, including PTSD, sleep apnea, tuberculosis, a neurological disorder, and migraines, make him more susceptible to the virus and require specialized treatment at a different facility.  Id. at 2.  He asserts the BOP has failed to provide him with treatment and testing and argues he

7

is being discriminated against in violation of the Rehabilitation Act.

In addition to his claims related to COVID-19, Petitioner argues his § 1591 conviction must be vacated in light of the Supreme Court's decision in Rehaif v. United States, 139 S. Ct. 2191 (2019) (clarifying the necessary elements of a conviction under 18 § 922(g)) and Esquivel-Quintana v. Sessions, 137 S. Ct. 1562 (2017) (holding a state statute criminalizing consensual sexual intercourse between a 21-year-old and a 17-year-old did not qualify as sexual abuse of a minor under the Immigration and Nationality Act). Petitioner asserts the United States did not prove at trial that the victim was a minor. ECF No. 7 at 6.

II. STANDARD OF REVIEW

Title 28, Section 2243 of the United States Code provides in relevant part as follows:

> A court, justice or judge entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto.

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition must be construed liberally. See Hunterson v. DiSabato, 308 F.3d 236, 243 (3d Cir. 2002).

8

III. DISCUSSION

A. <u>Conditions of Confinement</u>

Petitioner asks this Court to release him from Fort Dix to serve out the remainder of his sentence on home confinement under the CARES Act. Alternatively, he asks for a transfer to a different facility. The United States argues the petition should be dismissed because the relief sought is not cognizable in habeas, Petitioner failed to exhaust his administrative remedies, and Petitioner is otherwise not entitled to release on home confinement.

Citing the Supreme Court's dicta that left open the possibility of prisoners challenging the conditions of their confinement through a habeas petition in exceptional circumstances, the Third Circuit recently permitted immigration detainees to challenge their conditions of confinement under § 2241. "Given the extraordinary circumstances that existed in March 2020 because of the COVID-19 pandemic, we are satisfied that their § 2241 claim seeking only release on the basis that unconstitutional confinement conditions require it is not improper." <u>Hope v. Warden York Cty. Prison</u>, 972 F.3d 310, 324-25 (3d Cir. 2020); <u>see also</u> <u>Bell v. Wolfish</u>, 441 U.S. 520, 526 n.6 (1979); <u>Preiser v. Rodriguez</u>, 411 U.S. 475, 499 (1973). The Court assumes that the current state of the COVID-19 pandemic continues to be considered extraordinary circumstances and that

9

Hope extends to convicted prisoners. Accordingly, the Court concludes it has jurisdiction to review Petitioner's conditions of confinement claims under § 2241.

The United States argues the petition should be dismissed because Petitioner failed to exhaust his administrative remedies. "There is a judicially created exhaustion requirement for habeas petitions brought under 28 U.S.C. § 2241." Furando v. Ortiz, No. 20-3739, 2020 WL 1922357, at *3 (D.N.J. Apr. 21, 2020) (internal citations omitted). Failure to exhaust these remedies "generally bars review of a federal habeas corpus petition absent a showing of cause and prejudice . . ." Moscato v. Fed. Bureau of Prisons, 98 F.3d 757, 761 (3d Cir. 1996). Courts "require exhaustion for three reasons: (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." Id. at 761-62.

According to the BOP, Petitioner filed one administrative remedy request for home confinement. Declaration of Senior Attorney Christina Clark ("Clark Dec.") ECF No. 10-2 ¶ 4. "Remedy 1017291-F1 was rejected because he failed to file an informal resolution (BP-8) prior to submitting with the Warden and he failed to file through his Correctional Counselor or

10

other Unit Team member." Id. Petitioner never resubmitted this request, depriving the BOP of the opportunity to decide his request in the first instance.

Petitioner does not object to this characterization of his administrative history and offers no reason for failing to exhaust other than "[t]he government's response can not be dignified with a response." ECF No. 11 at 1. "The respondents continue to disrespect and insult minority families by telling them they have no standing to seek the release of their loved one which is clearly within their article III right guaranteed by the Constitution of the USA." ECF No. 13 at 1. Therefore, Petitioner has not shown "cause" for his failure to exhaust.

The Court further concludes Petitioner has not established that he will be prejudiced if the Court dismisses his petition as unexhausted. Pre-release placement decisions, such as transfers to home confinement, are committed to the BOP's sole discretion. 18 U.S.C. § 3624(c)(2); see also Prows v. Fed. Bureau of Prisons, 981 F.2d 466 (10th Cir. 1992) (holding prerelease custody statute does not bestow upon federal inmates an enforceable entitlement to any particular form of prerelease custody and provides merely an authorization, rather than a mandate, for nonprison confinement."). The CARES Act did not remove that discretion, it only gave the Attorney General the authority to expand the class of inmates that can be released on

11

home confinement under 18 U.S.C. § 3624(c)(2).  See Furando v. Ortiz, No. 20-3739, 2020 WL 1922357, at *2 (D.N.J. Apr. 21, 2020) ("Upon direction of the Attorney General, Section 12003(b)(2) of the CARES Act temporarily suspends the limitation of home confinement to the shorter of 10 percent of the inmate's sentence or 6 months.").  Attorney General Barr used this authority and set out the factors to guide the BOP's determination in his March 26 and April 3 memoranda.

Where legislation has "failed to address a precise question, but has given an 'express delegation of authority to the agency to elucidate a specific provision of the statute by regulation,' then the agency's 'legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute.'"  Zheng v. Gonzales, 422 F.3d 98, 112 (3d Cir. 2005) (quoting Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843–44 (1984)).  The plain text of the CARES Act grants additional discretion to the Attorney General; it does not require the BOP to release all at-risk, non-violent inmates.  Because "Congress has not identified any further circumstance in which the Bureau either must grant" home confinement "or is forbidden to do so . . . all we must decide is whether the Bureau, the agency empowered to administer" the home confinement program, "has filled the statutory gap 'in a way that is reasonable in light of the

12

legislature's revealed design.'"  Lopez v. Davis, 531 U.S. 230, 242 (2001) (quoting NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co., 513 U.S. 251, 257 (1995)).

Petitioner was convicted of sex trafficking of a minor. The March 26 Memorandum specifically excludes sex offenses from CARES Act home confinement consideration.  March 26 Memorandum at 2.  Determining that inmates convicted of certain offenses pose a risk to the public's safety is not an abuse of the BOP's discretion.  See Lopez, 531 U.S. 230 (holding the BOP may categorically exclude prisoners from early release based on their preconviction conduct).  Because the BOP's interpretation of the CARES Act is reasonable as applied to Petitioner, he will not be prejudiced by dismissing the petition as unexhausted.

Petitioner's argument that he has not received medical care for his existing illnesses is not cognizable in habeas petition and needs to be brought in a civil rights action.  "The 'core' habeas corpus action is a prisoner challenging the authority of the entity detaining him to do so, usually on the ground that his predicate sentence or conviction is improper or invalid." McGee v. Martinez, 627 F.3d 933, 935 (3d Cir. 2010) (citing Leamer v. Fauver, 288 F.3d 532, 542 (3d Cir. 2002)).  "[W]hen the challenge is to a condition of confinement such that a finding in plaintiff's favor would not alter his sentence or undo his conviction," a civil rights action is the proper method

13

to seek relief.  Leamer, 288 F.3d at 542.  Petitioner's request for a temporary restraining order or preliminary injunction seeking mental health treatment should be brought in a civil rights action.  See ECF No. 14.

Likewise, Petitioner's argument that the closure of a group mental health program due to COVID-19 violates the Rehabilitation Act[3] does not sound in habeas.  See Johnson v. Zickefoose, 2012 WL 5880344, at *8 and n.5 (D.N.J. 2012) (dismissing Rehabilitation Act claim from habeas petition). Even if Petitioner could bring this claim in a § 2241 proceeding he has not stated a claim under the Rehabilitation Act as he does not allege he is being denied access to mental health treatment because of his disability; he concedes the program was disbanded because of COVID-19.  The Court declines to separate Petitioner's medical care and Rehabilitation Act claims into a civil rights action because there are different procedural and pleading requirements for civil rights actions under the Prisoner Litigation Reform Act.

Based on the record before the Court, the Court finds that release to home confinement is not warranted because Petitioner

---

[3] Section 504 of the Rehabilitation Act prohibits a program or activity that receives federal funding from excluding or discriminating against a qualified individual with a disability because of their disability.  29 U.S.C. § 794.

14

did not exhaust his administrative remedies and Petitioner has not shown cause and prejudice for failing to exhaust.

B.  Actual Innocence

Petitioner also argues that his conviction under 18 U.S.C. § 1591 is invalid under Rehaif and Esquivel-Quintana because the United States failed to prove the victim was under 16.[4]

Section 2241 "confers habeas jurisdiction to hear the petition of a federal prisoner who is challenging not the validity but the execution of his sentence."  Coady v. Vaughn, 251 F.3d 480, 485 (3d Cir. 2001).  Generally, a challenge to the validity of a federal conviction or sentence must be brought under 28 U.S.C. § 2255.  See Jackman v. Shartle, 535 F. App'x 87, 88 (3d Cir. 2013) (per curiam) (citing Okereke v. United States, 307 F.3d 117, 120 (3d Cir. 2002)).  "[Section] 2255 expressly prohibits a district court from considering a challenge to a prisoner's federal sentence under § 2241 unless the remedy under § 2255 is 'inadequate or ineffective to test the legality of his detention.'"  Snyder v. Dix, 588 F. App'x 205, 206 (3d Cir. 2015) (quoting 28 U.S.C. § 2255(e)); see also In re Dorsainvil, 119 F.3d 245, 249 (3d Cir. 1997).

In the Third Circuit, prisoners may use § 2241 to challenge their convictions after two conditions are satisfied: (1) there

---

[4] Petitioner states the victim was 16 years old and not younger than 16.

15

must be "a claim of actual innocence on the theory that [the prisoner] is being detained for conduct that has subsequently been rendered non-criminal . . . in other words, when there is a change in statutory caselaw that applies retroactively in cases on collateral review," and (2) "the prisoner must be 'otherwise barred from challenging the legality of the conviction under § 2255.'"  Bruce v. Warden Lewisburg USP, 868 F.3d 170, 180 (3d Cir. 2017) (quoting United States v. Tyler, 732 F.3d 241, 246 (3d Cir. 2013)).  "It matters not whether the prisoner's claim was viable under circuit precedent as it existed at the time of his direct appeal and initial § 2255 motion.  What matters is that the prisoner has had no earlier opportunity to test the legality of his detention since the intervening Supreme Court decision issued."  Id.

Assuming without deciding that Petitioner satisfies the first requirement, he has not satisfied the second Bruce requirement because he had prior opportunities to raise his Rehaif and Esquivel-Quintana arguments.  Both cases were issued before Petitioner's direct appeal concluded,[5] meaning he could have raised these arguments before the Fourth Circuit during his direct appeal.  Additionally, Petitioner has not filed a motion

---

[5] Rehaif was decided on June 21, 2019 and Esquivel-Quintana was decided on May 30, 2017.  The Fourth Circuit affirmed Petitioner's convictions on November 21, 2019.

16

under § 2255.  Section 2255 is not inadequate or ineffective when Petitioner may yet raise his Rehaif and Esquivel-Quintana arguments under that statute.  See Aigbekaen v. Fed. Bureau of Prisons, 819 F. App'x 70, 71 (3d Cir. 2020) (finding "because he could have raised a challenge . . . at trial or on direct appeal, and may yet do so in a motion under § 2255, the 'safety valve' does not apply.").  The Court therefore lacks jurisdiction over Petitioner's actual innocence claim.

C.   Motion for Sanctions

Petitioner moves for sanctions against the United States "for attempting to mislead the Court, making factually erroneous statements and disregarding the American core values of compassion, mercy, redemption and second chances."  ECF No. 11 at 1.  He generally argues that the BOP operates a punitive system, not a rehabilitation system, and fosters racial discrimination and slavery.  Id. at 2-3.  The remainder of his motion consists of song lyrics, id. at 4; Bible verses, id. at 5-7, 11-13; newspaper articles, id. at 10, 14; and sheet music, id. at 15-16.

The Court has reviewed the United States' filing and Petitioner's motion and finds that sanctions are not warranted.  Fed. R. Civ. P. 11.  Petitioner's motion is denied.

D.  Writ of Mandamus

Petitioner also seeks a writ of mandamus "compelling the Warden of the Institution FCI Fort Dix to respect his constitutional, innate, Godgiven, birthright to practice a different 'religion' on every day of the week."  ECF No. 12 at 2.  "Petitioner also requests that his religious items that were confiscated as 'contraband' are returned to him or sent back to the Royal Palace of the OBA of BENIN."  Id.

"The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  28 U.S.C. § 1361.  Mandamus relief is an extraordinary remedy, and "the Supreme Court has required that 'a party seeking issuance have no other adequate means to attain the relief he desires.'"  United States v. Santtini, 963 F.2d 585, 594 (3d Cir. 1992) (quoting Allied Chemical Corp. v. Daiflon, Inc., 449 U.S. 33, 35 (1980)).

The Court declines to issue a writ of mandamus to Petitioner because he has not shown that he has no other remedy.  Here, Petitioner has access to the BOP's internal remedy system to address his concerns about his ability to practice his religion.  See 28 C.F.R. §§ 542.10-542.19.  There is no showing that Petitioner attempted to resolve his concerns with the BOP

18

before asking this Court for the drastic remedy of a writ of mandamus. The request for a writ of mandamus will be denied.

E.   Motion for Bail

Finally, Petitioner requests to be released on bail. ECF No. 6. He argues that because other prisoners have been released due to the COVID-19 pandemic, the Equal Protection Clause requires him to be released as well.

"[B]ail pending disposition of habeas corpus review is available 'only when the petitioner has raised substantial constitutional claims upon which he has a high probability of success . . . or exceptional circumstances exist which make a grant of bail necessary to make the habeas remedy effective.'" United States v. Weicksel, 517 F. App'x 67, 68 (3d Cir. 2013) (per curiam) (quoting Landano v. Rafferty, 970 F.2d 1230, 1239 (3d Cir. 1992) (omission in original)). See also United States v. Knight, No. 1:08-CR-141-06, 2017 WL 75575, at *2 (M.D. Pa. Jan. 9, 2017). The Court has denied Petitioner's § 2241 petition. His request for bail will likewise be denied.

IV.  Conclusion

The Court dismisses the habeas corpus petition for failure to exhaust and for lack of jurisdiction. Petitioner's motions are denied. An appropriate Order will be entered.

Dated: November 24, 2020              s/ Noel L. Hillman
At Camden, New Jersey                 NOEL L. HILLMAN, U.S.D.J.